## George E. Johnston *vs.* Frances P. Johnston.

### JULY 30, 1948.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Capotosto, J. This bill in equity alleges fraud and prays that the respondent be ordered to reconvey to the complainant an undivided one-half interest in and to certain real estate in the town of Hopkinton in this state. After a hearing on bill, answer and proof the trial justice granted the prayer of the bill and a decree was thereafter entered in accordance with his decision. The cause is before us on respondent's appeal from the entry of that decree.

Complainant's basic claim is that the respondent, either intentionally or as the result of gross misapprehension on her part, deceived him into an illegal marriage. Undisputed evidence shows that on January 28, 1928 the complainant went through a marriage ceremony with the respondent, who claimed to be a widow; that in July of that year he built a small house on land which he had owned for some years prior to that ceremony; that by deed dated March 25, 1929 he conveyed to her as "my wife" an undivided one-

half interest in the property; and that in 1945 he discovered that her husband, Frederick A. Palmer, was alive and an inmate of a veterans hospital in Newington, Connecticut.

It is also undisputed that in 1902 the respondent had married Palmer, who left her some six years later for parts unknown; that in 1919 she married Albert Potter, who died in 1926; and that thereafter, as above stated, she went through a marriage ceremony with the complainant. In her application for a license to marry the complainant, which she signed and swore to, respondent represented that it was her third marriage and that she was a widow, leaving unanswered the question as to whether she had ever been divorced.

Respondent's explanation of her marital entanglements was that she married Potter in the belief that Palmer was dead; that some time thereafter, while living with Potter, she learned from her daughter that Palmer was alive, whereupon she consulted an attorney, since deceased, who told her not to worry as Palmer probably had obtained a divorce from her somewhere; and that because of such advice she concealed from the complainant the fact that Palmer was living until complainant himself discovered it in 1945. When he then accused her of deception and asked for an explanation her answer, according to his testimony which was not denied, was that what she did before her marriage to him was none of his business. A few days later she removed most of the furniture from the house and left him.

At the time of the alleged marriage, the complainant was employed as a railroad bridge carpenter and he continued to work regularly at that occupation until 1944, when he was disabled by accident and thereafter received a pension of $50 a month. The respondent worked in a mill until 1935. From the very beginning their life together was marked with dissension, due mainly to disputes over the respondent's right to share in complainant's savings and real estate. This led to such an estrangement that,

as the respondent testified, they practically lived separate and apart from 1930 on, each occupying a different part of the house although apparently co-operating in other household matters. In 1935 she brought a petition for divorce which was granted, the interlocutory decree providing that he pay her an allowance of $10 a week. Following the entry of that decree they resumed living under the same conditions as theretofore, but she did not return to work until he was disabled by accident. No final decree was entered in that divorce case, yet he continued to pay her, with occasional irregularity, the weekly allowance in accordance with the interlocutory decree from 1935 to the time of his accident in 1944.

The evidence is highly conflicting as to whether the respondent contributed anything to the cost of building the house. She testified that, in addition to defraying some of the household expenses, she paid for all the labor out of her weekly earnings, which, in direct examination, she positively fixed at from $36 to $40 a week. In cross-examination, however, on being confronted with unchallenged excerpts from her employer's records, which showed that she had not worked from March to September 1928 and that when she did work her earnings ranged from $18.80 to $32.60 a week, her final answer was: "That is too far back. I can't remember those things." Her testimony was practically uncorroborated.

On the other hand, the complainant testified that he built the house so that he might have a home with one whom he believed to be his lawful wife; that he paid for all material and labor for the construction of the house, which cost between $2500 to $3000; that he made most of the payments himself, and in a few instances, because of his employment, he gave the money to the respondent to pay the workmen; and that nearly all the money so expended came from a savings account standing in his name alone in a Westerly bank. His bankbook showing withdrawals of substantial sums in the total amount of approxi-

mately $2500 during the period in question was introduced in evidence.

The credibility of the parties was of prime importance in the circumstances of this case. The trial justice who saw and heard them while testifying, an opportunity which we do not have, found that the respondent had misled the complainant, an innocent person, into an unlawful marriage. He further found that all payments for the construction of the house were made with complainant's money. Two additional findings are implicit in his decision: first, that the complainant conveyed an undivided one-half interest in the property to the respondent solely because he believed her to be his wife; and, secondly, that in ordering a reconveyance of that interest to the complainant no real injustice was done to the respondent as she was compensated for whatever services she rendered as housekeeper or alleged wife by having had a home over the years and by the weekly payments that she received from the complainant under the interlocutory divorce decree.

Whether the trial justice rested his decision on the ground of fraud or of a material mistake of fact is not clear. However, either ground is sufficient for relief in equity in the proper circumstances. The jurisdiction of equity to grant relief in a case of fraud, actual or constructive, is beyond question. It is also well settled that equity will grant relief, if it can be done without injustice, whenever parties act innocently on a mistake as to a material present or past fact. If, however, such fact is known to one party and is concealed from the other who acts without knowledge thereof to his prejudice, then the concealment is in the nature of fraud and equity again will grant relief to the innocent party. Whether relief shall be granted on the ground of fraud or mistake therefore depends on the particular facts of each case.

From our examination of the evidence we cannot say that the decision of the trial justice was clearly wrong on the main issues in the case, but in our opinion the decree

appealed from should be modified in certain respects. Respondent testified and the complainant admitted that from 1936 on each paid yearly one half of the real estate tax on the property in question. The amounts of the payments so made by respondent do not appear in evidence. Furthermore, the respondent testified, without specific denial by the complainant, that she paid three premiums of $45 each for insurance on the property. On the reconveyance by the respondent of the undivided one-half interest in the property now standing in her name, justice requires that at that time the complainant reimburse her for the taxes and insurance premiums just mentioned.

The respondent's appeal is denied and dismissed, and the decree appealed from is modified in the manner and to the extent above specified. The parties may present to this court for approval a form of decree, in accordance with this opinion, to be entered in the superior court.

*M. Walter Flynn, George Ajootian,* for complainant.

*Edward M. Botelle,* for respondent.